UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THEODORE LEWIS,                                    :
                            Plaintiff,             :
                                                   :
v.                                                 :
                                                   :
WESTCHESTER COUNTY; WESTCHESTER     :
COUNTY DEPARTMENT OF PUBLIC             :
SAFETY; COMMISSIONER OF PUBLIC        :          **OPINION AND ORDER**
SAFETY THOMAS GLEASON, Acting in      :
Both His Official and Unofficial Capacities;   :          20 CV 9017 (VB)
POLICE OFFICER RICHARD LEPORE, JR.,    :
Shield Number 1159, Acting in Both His    :
Official and Unofficial Capacities; and JOHN   :
DOE OFFICERS 1-5, Their True Names and    :
Identities Presently Unknown, All Acting in   :
Both Their Official and Unofficial Capacities,   :
                            Defendants.            :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Theodore Lewis brings this action pursuant to 42 U.S.C. §§ 1983 and 1985

against defendants Westchester County, Westchester County Department of Public Safety,

Commissioner of Public Safety Thomas Gleason, Officer Richard LePore, Jr., and John Doe

Officers 1-5.  Plaintiff asserts claims for unreasonable and excessive force, cruel and unusual

punishment, false arrest and false imprisonment, malicious prosecution, supervisory liability and

failure to intercede, and conspiracy.  Plaintiff also brings claims under New York state law.

Now pending are defendants' motion to dismiss the first amended complaint ("FAC")

pursuant to Rule 12(b)(6) (Doc. #10), and plaintiff's cross-motion for leave to amend the FAC

(Doc. #16).

For the following reasons, defendants' motion to dismiss is GRANTED, and plaintiff's

motion for leave to amend is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the FAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges that, on August 19, 2017, he was riding in the rear compartment of a U-Haul truck "in the vicinity of the Hutchinson River Parkway and Mamaroneck Avenue" in White Plains, New York.  (FAC ¶ 14).  According to plaintiff, Officer Lepore and/or John Does 1-5 stopped the vehicle.  Plaintiff claims Officer Lepore questioned him during the stop.  He further alleges he capitulated to Officer Lepore's "demands" because he feared for his safety and that he could suffer abuse at the hands of defendants.  According to plaintiff, Officer Lepore searched the vehicle's rear compartment, where plaintiff was sitting with other individuals, and recovered a firearm and "an instrument claimed to be a forged instrument from within a bag not owned or possessed by Plaintiff."  (Id. ¶ 21).  Plaintiff claims he was "thereafter handcuffed, searched, arrested and charged by Defendant with Criminal Possession of a Weapon Second Degree, a Class C Felony, and Criminal Possession of a Forgery Device/Counterfeit, a Class D Felony."  (Id. ¶ 22).

Plaintiff alleges that after he was arrested, he was held in the Westchester County jail until November 17, 2017, "after an unduly high bail was set."  (FAC ¶ 30).  He claims all charges against him were dismissed and sealed on March 22, 2019.

**DISCUSSION**

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).[1]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.   Excessive Force Claim

Plaintiff asserts an Eighth Amendment cruel and unusual punishment claim as well as a Fourth Amendment excessive force claim based on defendants' alleged use of excessive force during plaintiff's arrest on August 19, 2017.[2]

---

[1]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

[2]      To the extent plaintiff's Eighth Amendment claim is premised on his allegation that his bail was set excessively high—which is not clear from his opposition to the pending motion— that claim is dismissed because defendants were not personally involved in setting plaintiff's bail.  Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed."  U.S. Const. Amend. VIII.  "In New York, the decision to set bail—and the amount at which it is set—is made by and at the discretion of the presiding judge."  Sullivan v. City of N.Y., 2015 WL 5025296, at *8 (S.D.N.Y. Aug. 25, 2015) (citing N.Y. Crim. Proc. L. § 530.10 et seq.), aff'd, 690 F. App'x 63 (2d Cir. 2017).  "Because the power to set bail is vested solely in

For the following reasons, the Court concludes plaintiff fails plausibly to allege defendants' use of force violated the Fourth and Eighth Amendments.[3]

A.    Eighth Amendment

"[T]he Eighth Amendment applies only to claims of cruel and unusual punishment imposed on an individual after he or she has been convicted of a crime." Younger v. City of N.Y., 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007).  Indeed, "[t]he Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes, and consequently the Clause applies only after the [government] has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Whitley v. Albers, 475 U.S. 312, 318–19 (1986).

At the time of defendants' alleged use of excessive force, plaintiff was neither convicted of a crime nor incarcerated.  Thus, plaintiff's allegation that defendants used excessive force during the August 19, 2017, arrest implicates the Fourth Amendment, but not the Eighth Amendment.

---

the presiding judge, there can be no Eighth Amendment liability for a person who merely makes a recommendation regarding the appropriate level of bail." Id.  Here, no defendant acted as the judge presiding over plaintiff's bond hearing.  Accordingly, plaintiff's Eighth Amendment claim based on allegations of excessive bail must be dismissed.

[3]    Defendants incorrectly argue plaintiff's Section 1983 claims for unreasonable and excessive force, cruel and unusual punishment, and false arrest are barred by the applicable statute of limitations.  Plaintiff's Section 1983 claims are subject to a three-year statute of limitations, which—according to defendants—began to run on August 19, 2017.  See Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).  Therefore, the deadline for plaintiff to bring this action, under normal circumstances, was August 19, 2020.  Plaintiff did not file his complaint until October 28, 2020.  However, on March 20, 2020, New York's Governor issued Executive Order No. 202.8, which tolled "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state." Executive Order 202.8, which was in effect until November 3, 2020, thereby tolled the statute of limitations as to plaintiff's Section 1983 claims.  See Bonilla v. City of N.Y., 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020).  Accordingly, plaintiff's Section 1983 claims were timely filed.

Nor is the Court persuaded by plaintiff's argument that "the detention of an innocent man in jail is itself cruel and unusual punishment." (Doc. #15 at ECF 11).[4]  It is well established that, prior to a determination of guilt, incarceration alone does not implicate the Eighth Amendment because "the government may detain [a person lawfully committed to pretrial detention] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536–37 (1979).

Accordingly, plaintiff's Eighth Amendment claim must be dismissed.

B.     Fourth Amendment

Plaintiff also fails, as a matter of law, to state an excessive force claim under the Fourth Amendment.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399).  Accordingly, to state a Fourth Amendment excessive force claim, a plaintiff must plausibly allege the force used by the defendant was objectively unreasonable. Cox v. City of New Rochelle, 2019 WL 3778735, at *7 (S.D.N.Y. Aug. 12, 2019).

"[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing

---

[4]      "ECF" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96.  This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396.  It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).  "When courts grant motions to dismiss an excessive force claim, it is because the force used was objectively reasonable as a matter of law." Phillips v. City of Middletown, 2018 WL 4572971, at *3 (S.D.N.Y. Sept. 24, 2018).

Under certain circumstances, handcuffing can constitute excessive force.  "In evaluating the reasonableness of handcuffing, a [c]ourt is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." White v. City of New York, 2019 WL 1428438, *10 (S.D.N.Y. March 29, 2019); accord Ketcham v. City of Mount Vernon, 992 F.3d 144, 150–51 (2d Cir. 2021).

Here, plaintiff fails plausibly to state an excessive force claim against defendants.  In support of this claim, plaintiff alleges only that he was "handcuffed, searched, arrested and charged by Defendant." (FAC ¶ 22).  Plaintiff provides no facts from which the Court can infer any defendant used "force beyond that which [was] warranted by the objective circumstances of [plaintiff's] arrest." Cugini v. City of New York, 941 F.3d 604, 612 (2d Cir. 2019).  Indeed, plaintiff's only allegation regarding use of force is that defendants handcuffed him.  However, this allegation, without more, is insufficient to sustain an excessive force claim.  Plaintiff alleges no facts from which the Court could plausibly infer the handcuffs were unreasonably tight, that

plaintiff complained the handcuffs were unreasonably tight, or that plaintiff sustained any injury at all as a result of the handcuffing.  As a result, plaintiff fails to allege defendants used any objectively unreasonable force.

Accordingly, plaintiff's Fourth Amendment excessive force claim must be dismissed.

III.   False Arrest and False Imprisonment Claim

Defendants argue plaintiff's false arrest and false imprisonment claim fails because, even accepting the allegations in the FAC as true, the officers had probable cause to arrest plaintiff on August 19, 2017.

The Court agrees.

A.   Applicable Law

Section 1983 claims for false arrest and false imprisonment, derived from the Fourth Amendment right to remain free from unreasonable seizures, are considered synonymous causes of action.  See Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  A Section 1983 claim for false arrest and false imprisonment is analyzed under the law of the state where the arrest occurs. Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).  "Under New York law, the elements of a false arrest and false imprisonment claim are:  (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019).

A confinement by police officers is "otherwise privileged" when it is supported by probable cause.  Morris v. Silvestre, 604 F. App'x 22, 24 (2d Cir. 2015).  Thus, the existence of probable cause is an absolute defense to a claim of false arrest and false imprisonment.  Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).  An officer has probable cause to arrest when he or

she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Courts determine whether probable cause existed by focusing on the facts available to the arresting officer at the time of the arrest. See Jaegly v. Couch, 439 F.3d at 153.

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). As long as there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail. Jaegly v. Couch, 439 F.3d at 152.

When an arrest is made without a judicial warrant, the existence of probable cause is an affirmative defense for which the defendant bears the burden of proof. See Dickerson v. Chertoff, 604 F.3d 732, 751 (2d Cir. 2010). Nevertheless, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

B.    Application

Plaintiff fails plausibly to state a claim for false arrest and false imprisonment because, accepting the allegations in the FAC as true, defendants had probable cause to arrest plaintiff.

1.    Fruit of the Poisonous Tree Doctrine

First, plaintiff alleges that defendants lacked probable cause to stop and search the vehicle in which plaintiff was riding.  Plaintiff argues that because defendants' search of the rear compartment of the U-Haul truck was unlawful, defendants also lacked probable cause to arrest plaintiff.

Plaintiff is wrong.  Even accepting as true plaintiff's allegation that defendants lacked probable cause to stop and search the vehicle, it does not follow that defendants lacked probable cause to arrest plaintiff.  Plaintiff's argument relies upon the "fruit of the poisonous tree" doctrine, which "may not be invoked to support a § 1983 civil action, because the doctrine 'is an evidentiary rule that operates in the context of criminal procedure . . . and as such has generally been held to apply only in criminal trials.'"  Lawrence v. City Cadillac, 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010) (quoting Townes v. City of N.Y., 176 F.3d 138, 145 (2d Cir. 1999)).  In the context of federal false arrest claims, officers may use evidence obtained during the course of an allegedly illegal search to establish probable cause for an arrest.  See Hatcher v. City of N.Y., 2018 WL 1583036, at *3–4 (S.D.N.Y. Mar. 27, 2018).  Therefore, whether defendants had probable cause to stop and search the vehicle has no bearing on plaintiff's false arrest and false imprisonment claim.

2.    The Automobile Presumption

Plaintiff also argues defendants lacked probable cause to arrest plaintiff because the gun and "instrument claimed to be a forged instrument" were found within a bag "not owned or possessed by Plaintiff."  (FAC ¶ 20).  According to plaintiff, "[t]he bags searched [during the stop] bore the names of the respective owners of the bags" (id. ¶ 17), and "[d]efendants were aware that Plaintiff did not possess said firearm or forgery device."  (Id. ¶ 24).  Even accepting

as true these allegations, defendants had probable cause to arrest plaintiff for criminal possession of a weapon.

Under New York Penal Law § 265.15 (the "Automobile Presumption"), officers may have probable cause for the arrest of all occupants of a vehicle in which a weapon is found. Specifically, the Automobile Presumption states the "presence in an automobile, other than a stolen one or a public omnibus, of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found." N.Y. Penal Law § 265.15(3). The Automobile Presumption is permissive, not mandatory. And probable cause is negated when arresting officers are aware of circumstances establishing a statutory exemption, including if: (1) the firearm is found on the person of any occupant; (2) the vehicle in which the firearm is found is being lawfully operated for hire—in such instance the duly licensed driver is not subject to the presumption; or (3) an occupant has in his possession a valid license to have and carry the firearm. Id.; see also Shabazz v. Kailer, 201 F. Supp. 3d 386, 393 (S.D.N.Y. 2016) ("Certain facts known to the police officer may be sufficient to rebut the presumption and therefore negate the existence of probable cause to prosecute.").

For example, in Matthews v. City of New York, 889 F. Supp. 2d 418 (E.D.N.Y. 2012), the defendants discovered a firearm in the pocket of a jacket located in the vehicle in which the plaintiff was riding. Defendants then arrested the plaintiff for criminal possession of a weapon. At the time the firearm was discovered, the jacket was not being worn by and had not been claimed by any of the vehicle's occupants, who had exited the vehicle prior to its discovery. In granting the defendant officers' motion to dismiss the false arrest claim under Fed. R. Civ. P. 12(c), the court concluded the circumstances under which the firearm was discovered did not

provide any basis to apply a statutory exemption to the Automobile Presumption and therefore the arresting officers had probable cause to arrest the plaintiff pursuant to the Automobile Presumption.

Here, plaintiff alleges nothing from which the Court could infer a statutory exemption to the Automobile Presumption applies.  Nor does plaintiff plausibly allege any officer had knowledge of exculpatory evidence negating the Automobile Presumption.  Although plaintiff argues the firearm was discovered within a bag "not owned or possessed by Plaintiff" (FAC ¶ 20), and "[t]he bags searched [during the stop] bore the names of the respective owners of the bags" (id. ¶ 17), neither of these allegations are sufficient to indicate the firearm belonged to any particular occupant of the vehicle.  See People v. Lemmons, 40 N.Y.2d 505, 511 (1976) ("[T]he placement of a weapon in a handbag does not necessarily indicate that the owner of a handbag is in sole and exclusive possession of the weapon . . . . To hold that merely because the weapons were found in a briefcase, handbag, shopping bag or carton the presumption is nullified would defeat the legislative intent and render the statute nugatory.").  Thus, because the firearm was discovered in the vehicle and was not claimed or possessed by any other passenger, defendants were entitled to presume each occupant of the U-Haul had constructive possession of the firearm.

Nor is the Court persuaded by plaintiff's allegation that defendants "were aware that Plaintiff did not possess said firearm."  (FAC ¶ 24).  This conclusory allegation does not serve to overcome the Automobile Presumption.  See Matthews v. City of N.Y., 889 F. Supp. at 436 (finding insufficient plaintiff's conclusory allegation that the defendants "knew that the jacket and gun did not belong to plaintiffs").

Accordingly, plaintiff's false arrest and false imprisonment claim under Section 1983 must be dismissed.

IV.    Malicious Prosecution Claim

Defendants argue plaintiff fails plausibly to state a claim for malicious prosecution because plaintiff fails to allege the criminal prosecution was terminated in his favor.

The Court agrees.

A.    Applicable Law

The elements of a Section 1983 malicious prosecution claim are borrowed from state law. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  To state a malicious prosecution claim under New York law, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010).

A criminal proceeding terminates in the plaintiff's favor when the plaintiff is acquitted or "for these purposes, only when [the criminal proceeding's] final disposition is such as to indicate the innocence of the accused." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) (collecting cases).

"As with false arrest claims, the existence of probable cause is a complete defense to a claim of malicious prosecution in New York, but unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged." Costello v. Milano, 20 F. Supp. 3d 406, 415 (S.D.N.Y.2014) (quoting Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003)).

B.    Analysis

Plaintiff's malicious prosecution claim must be dismissed because plaintiff fails to allege the criminal prosecution was terminated in plaintiff's favor.  Plaintiff alleges only that "[a]ll charges against Plaintiff were ultimately dismissed and sealed on March 22, 2019."  (FAC ¶ 31).

12

However, plaintiff fails to explain the basis of the termination.  "[B]are allegation[s] of dismissal, absent any explanation of the basis on which the case was dismissed, [are] insufficient to meet the favorable termination requirement."  Campbell v. Giuliani, 2000 WL 194815, at *4 (E.D.N.Y. Feb. 16, 2000) (finding plaintiff's allegation that "charges were dismissed by the Criminal Court of the City of New York, County of Kings" insufficient to allege the prosecution terminated in plaintiff's favor).[5]

Accordingly, plaintiff's claim for malicious prosecution must be dismissed.

V.      Failure to Intervene Claim and Supervisory Liability

Defendants argue plaintiff fails plausibly to state an Eighth Amendment failure to intervene claim and a claim for supervisory liability against defendants.

The Court agrees.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official."  Id.

With respect to claims for supervisory liability, to adequately allege a Section 1983 claim, a plaintiff must "plead that each Government-official defendant, through the official's

---

[5]      Defendants also argue plaintiff's malicious prosecution claim fails because they had probable cause to arrest plaintiff pursuant to the Automobile Presumption.  The probable cause standard in the context of malicious prosecution claims is slightly higher than the probable cause standard for false arrest claims.  See Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013).  However, because plaintiff fails to allege the criminal proceeding was terminated in his favor, the Court need not decide whether the Automobile Presumption provided defendants with probable cause sufficient to defeat plaintiff's malicious prosecution claim.

own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676; see

Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).  "[P]ersonal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  "Where the complaint names a defendant in

the caption but contains no allegations indicating how the defendant violated the law or injured

the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."

See Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017).

 "Critically, a failure to intervene claim can only be sustained where there is an underlying

constitutional violation."  D'Attore v. City of N.Y., 2013 WL 1180395, at *6 (S.D.N.Y. Mar. 15,

2015).  And, similarly, "for a supervisor to be liable under Section 1983, there must have been an

underlying constitutional deprivation."  Blyden v. Macusi, 186 F.3d 252, 265 (2d Cir. 1999).

 Plaintiff alleges defendants failed to "intercede on behalf of Plaintiff to prevent [his] false

arrest, the excessive use of force and unreasonable, continued seizure upon Plaintiff."  (FAC ¶

58).  Plaintiff also alleges defendants are liable as supervisors for the alleged excessive force,

false arrest, and false imprisonment because they "failed to properly supervise the subordinate

officer in their charge."  (Id.).  But, as discussed above, plaintiff has failed to allege claims for

excessive force and false arrest and imprisonment.  Because plaintiff has failed to allege any

underlying constitutional violation, his claim for failure to intervene similarly fails.  See Roper v.

City of N.Y., 2017 WL 2483813, at *5 (S.D.N.Y. June 7, 2017) (dismissing derivative claims

under Section 1983 for failure to intervene when plaintiff failed plausibly to allege a violation of

any constitutional right).

 Accordingly, plaintiff's claims for failure to intervene and for supervisory liability must

be dismissed.

VI.   <u>Conspiracy Claim</u>

Defendants argue plaintiff has failed to state an actionable conspiracy claim arising under

42 U.S.C. § 1985 because plaintiff's allegations provide no factual basis from which the Court

could infer a meeting of the minds.

The Court agrees.

To state a conspiracy claim under Section 1985(3), plaintiff must allege "(1) a

conspiracy, (2) for the purpose of depriving any person or class of persons of the equal

protection of the laws or of equal privileges and immunities under the laws, (3) an act in

furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or

deprived of a right or privilege of a citizen." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 176 (2d Cir. 2007),

<u>rev'd on other grounds</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  To state a claim under Section

1985(3), plaintiff must also allege the conspiracy was motivated by some racial or other class-

based discriminatory animus.  <u>See</u> <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 194 (2d Cir.

1994).

"A conspiracy need not be shown by proof of an explicit agreement but can be

established by showing that the parties have a tacit understanding to carry out the prohibited

conduct." <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999).  However, plaintiff "must

provide some factual basis supporting a meeting of the minds, such that defendants entered into

an agreement, express or tacit, to achieve the unlawful end." <u>Webb v. Goord</u>, 340 F.3d 105, 110

(2d Cir. 2003).

Here, plaintiff's Section 1985 claim fails because the FAC lacks sufficient allegations

suggesting a conspiracy existed, or that any conspiracy was motivated by race or class-based

animus.  In support of his claim plaintiff alleges only that:

> The individual defendants, under color of law, conspired with each other to undertake a course of conduct to injure, oppress, threaten and intimidate Plaintiff in the free exercise and enjoyment of his rights and privileges and equal protection of the law secured by him by the Constitution and to impede, obstruct and hinder the due course of justice in New York State.

(FAC ¶ 61).  Plaintiff also alleges Officer Lepore's conduct was "offensive discriminatory, aggressive and/or threatening based upon his race."  (Id. ¶ 43).  These boilerplate and conclusory allegations are plainly insufficient to support a conspiracy claim pursuant to Section 1985.

Accordingly, plaintiff's conspiracy claim must be dismissed.

VII.   Municipal Liability

Defendants argue plaintiff's Section 1983 claims against Westchester County must be dismissed because plaintiff's allegations fail to satisfy the requirements of Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The Court agrees.

First, plaintiff has not adequately pleaded an underlying violation of his constitutional rights; thus, his municipal liability claim against Westchester County must be dismissed.  See Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) (noting the district court "was entirely correct" in declining to address plaintiff's Monell claim after finding no underlying constitutional violation).

Second, plaintiff's allegations regarding Westchester County's municipal liability are entirely conclusory.  Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  Monell v. Dep't of Soc. Servs., 436 U.S. at 694.  Therefore, to plausibly allege a Monell claim against Westchester County, plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the

deprivation of a constitutional right.  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

However, "[a] custom or policy cannot be shown by pointing to a single instance of

unconstitutional conduct."  Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y.

2008).

Here, plaintiff alleges Commissioner Gleason and/or his subordinates failed to properly

train and/or supervise their officers.  He also alleges "defendants maintain [] custom[s],

polic[ies] or practice[s], whether official or unofficial, written or unwritten, of exceeding their

lawful authority to stop, question[,] frisk[,] . . . [and] arrest individuals."  (FAC ¶¶ 28–29).

Finally, plaintiff alleges Gleason maintains or permits to be maintained a practice of unlawful,

searches, seizures, interrogations, and/or arrests of individuals based upon their race.  (Id. ¶ 41).

These conclusory allegations are insufficient to support a Monell claim under Section 1983

because they fail to identify a municipal policy or custom that caused plaintiff's injuries.  They

also fail to allege any facts supporting a plausible inference of a pattern and practice so

consistent and widespread as to constitute a municipal policy or custom.

Accordingly, plaintiff's Section 1983 claims against Westchester County must be

dismissed.[6]

---

[6]     Likewise, any Section 1983 claims against the police officer defendants "in their official
capacities" must be dismissed. "[A] suit against a governmental officer 'in his official capacity'
is the same as a suit 'against [the] entity of which [the] officer is an agent.'"  McMillian v.
Monroe County, 520 U.S. 781, 785 n.2 (1997).  Thus, Monell governs plaintiff's official-
capacity claims.

       In addition, plaintiff's claims against the Westchester County Department of Public
Safety ("DPS") are dismissed because it is a department of a municipality.  Under New York
law, "[t]he only proper defendant in a lawsuit against an agency of a municipality is the
municipality itself, not the agency through which the municipality acted."  Omnipoint
Commc'ns, Inc. v. Town of LaGrange, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009); see also, e.g.,
Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("A police department
cannot sue or be sued because it does not exist separate and apart from the municipality and does

VIII.  <u>State Law Claims</u>

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988).

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state-law claims plaintiff may be asserting.  <u>See</u> <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 173 (1997)).

IX.  <u>Leave to Amend</u>

On February 18, 2021, the same day plaintiff filed his opposition to defendants' motion to dismiss, plaintiff cross-moved for leave to amend the FAC.  Specifically, plaintiff requests "in the event this Court is inclined to dismiss upon the pleadings, Plaintiff be given an opportunity to further amend his complaint."  (Doc. #15 at ECF 18).  In support of his cross-motion, however, plaintiff provides no argument as to why he should be permitted leave to amend; he has submitted no proposed amendment, and he has not indicated what additional facts he intends to allege.  Rule 15(a)(2) provides that a party may amend its complaint only with the opposing party's consent or leave of court.  Although leave to amend should be "freely give[n] . . . when

not have its own legal identity") (quoting <u>Baker v. Willett</u>, 42 F. Supp. 2d 192, 197 (N.D.N.Y. 1999)).  Accordingly, all claims against DPS must be dismissed.

justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive . . . or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Because plaintiff has already amended once as a matter of course, and because he has not submitted a proposed second amended complaint or set forth any additional facts he intends to allege, he has not shown that any further amendment would not be futile. Therefore, plaintiff's request for leave to amend is denied. See, e.g., F5 Capital v. Pappas, 856 F.3d 61, 88–89 (2d Cir. 2017) (affirming district court's denial of plaintiff's request to amend the complaint based on futility in part because plaintiff had "given no clue as to how the complaint's defects would be cured through an amendment"); see also In re Cybershop.com Secs. Litig., 189 F. Supp. 2d 214, 236 (D.N.J. 2002) (leave to amend denied when plaintiff "failed to proffer any proposed, substantive amendment that would satisfy applicable pleading requirements; indeed, it [did] not suggest any amendment at all").

However, in the interest of ensuring that plaintiff has a full and fair opportunity to explain why further amendment of his complaint would not be futile, by September 22, 2021, plaintiff may file a formal motion for leave to amend accompanied by his proposed second amended complaint and a redline version comparing the FAC and his proposed second amended complaint. See Fed. R. Civ. P. 15(a)(2).

**CONCLUSION**

Defendants' motion to dismiss is GRANTED.

Plaintiff's cross-motion for leave to amend is DENIED.

By **September 22, 2021**, plaintiff may file a formal motion for leave to amend, including

his proposed second amended complaint and a redline version comparing the FAC and proposed

second amended complaint.  If plaintiff fails to do so, the Court will enter judgment and close the

case.  No extension of this deadline will be granted.

The Clerk is instructed to terminate the motions.  (Docs. ##10, 16).

Dated:  September 1, 2021
         White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge